# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**AKIEM R. BELLAMY**
     **Plaintiff,**

    v.                                        Case No. 17-C-1062

**NANCY A. BERRYHILL,**
**Acting Commissioner of the Social Security Administration**
     **Defendant.**

## DECISION AND ORDER

Plaintiff Akiem Bellamy seeks judicial review of the termination of his supplemental security income benefits. The Social Security Administration awarded plaintiff benefits as a child based on conduct and mood disorders (Tr. at 78, 174, 415-20, 739), but after he turned 18 the agency reviewed his status under the standards for adults, concluding that he was no longer disabled as of June 1, 2013 (Tr. at 79, 81, 115-16). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. at 118), but the ALJ agreed that his disability had ended (Tr. at 25). The Appeals Council denied review (Tr. at 1), making the ALJ's decision the final word from the agency on the matter. See Moreno v. Berryhill, 882 F.3d 722, 728 (7th Cir. 2018).

## I. FACTS AND BACKGROUND

Before the agency, plaintiff alleged continued disability due to diabetes mellitus and attention deficit hyperactivity disorder ("ADHD"). (Tr. at 55, 62, 218.) As part of its review, the agency arranged for a consultative psychological evaluation and obtained the opinions of

reviewing medical and psychological consultants.[1]

## A. Consultants' Reports

### 1. Examining Consultant

On May 31, 2013, Jeremy Meyers, Ed.D., conducted a psychological evaluation. Plaintiff displayed no physical limitations and was pleasant and agreeable. He indicated that he had been diagnosed with ADHD but denied any other clinical diagnoses. (Tr. at 574.) He reported normal sleep, good energy level, and good appetite; he experienced only rare crying spells, with no suicidal ideation. (Tr. at 575.) He was oriented x3, able to recall three of three objects immediately and after five minutes, able to spell the word "world" forward and backward, and had no difficulty following a three-step command or ongoing conversation. He reported a bad temper but no history of violence. (Tr. at 576.)

Dr. Meyers noted that plaintiff was able to perform activities of daily living in a timely manner, although relatively little seemed to be expected of him at the time. Plaintiff reported that he had never been fired from a job or required special accommodations. (Tr. at 576.) He expected to graduate from high school in June 2014 and was in special classes because of ADHD. His mother reported that he was slow in school, although learning disabilities were not reported. She also described him as very challenging and oppositional. (Tr. at 577.)

Dr. Meyers diagnosed attention deficit disorder, oppositional defiant disorder ("ODD"),

---

[1]The agency also collected plaintiff's treatment and school records. Summarized, the school records indicate that plaintiff displayed some behavioral problems and tested in the low average range, but he was able to graduate. (See Tr. at 421-61.) The medical treatment records document several hospitalizations for diabetes complications, often related to plaintiff's non-compliance with his insulin regimen (e.g., Tr. at 553, 757, 769); his symptoms generally improved with treatment (e.g., Tr. at 791, 831). The record contains no treating source opinion regarding plaintiff's work capacity.

2

and learning disabilities, with a GAF of 75.[2] (Tr. at 577-78.) Regarding plaintiff's work capacity, Dr. Meyers concluded:

> Mr. Bellamy should be able to understand, remember, and carry out simple instructions, if he feels like doing so. He should also be able to respond appropriately to supervisors and coworkers. Maintaining concentration and attention may test his ability to focus, but he should be able to meet work pace demands, as long as he fully understands what needs to be done. He should also be able to withstand routine work stress and adapt to the kind of changes he would find in a semi-skilled work environment.

(Tr. at 578.)

**2.    Reviewing Consultants**

On June 6, 2013, Syd Foster, D.O., reviewed the medical records, noting that plaintiff had been diagnosed with diabetes but there was no indication of end organ damage, and plaintiff's neurological, motor, and visual functions were intact. Dr. Foster concluded that plaintiff "has no severe physical limitations that would affect his ability to work." (Tr. at 580.)

On June 6, 2013, Eric Edelman, Ph.D., reviewed the record and concluded that plaintiff had no severe mental impairment. (Tr. at 581.) Dr. Edelman noted the diagnoses of ADHD and ODD (Tr. at 582, 588), but found that they produced only mild restriction of activities of daily living, social functioning, and concentration, persistence, and pace, with no episodes of decompensation (Tr. at 591). He concluded that these mild limitations would not affect plaintiff's ability to perform any work. (Tr. at 593.)

On June 17, 2014, Roger Rattan, Ph.D., reviewed the record and agreed that plaintiff

---

[2]GAF ("Global Assessment of Functioning") rates the severity of a person's symptoms and his overall level of functioning. Set up on a 0-100 scale, scores of 91-100 are indicative of a person with no symptoms, while a score of 1-10 reflects a person who presents a persistent danger of hurting himself or others. Scores of 81-90 reflect "absent or minimal" symptoms, 71-80 "transient" symptoms, and 61-70 "mild" symptoms. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

3

had no severe mental impairment (Tr. at 727), with plaintiff's ADD and ODD causing only mild limitations and no episodes of decompensation. (Tr. at 727, 734, 737.) "Currently, he is viewed to have only mild limitations and these would not affect his ability to perform any work." (Tr. at 739.)

Finally, on June 17, 2014, Ronald Shaw, M.D., reviewed the record, agreeing with Dr. Foster's evaluation of plaintiff's diabetes. He concluded: "Based on the totality of the evidence in [the] file, [plaintiff] has no severe physical limitations that would affect his ability to work." (Tr. at 741.)

**B.     Hearing Testimony**

On August 3, 2016, plaintiff appeared, pro se, for his hearing before the ALJ (Tr. at 32), waiving his right to representation (Tr. at 37, 158). The ALJ also summoned a vocational expert ("VE") to give an opinion on jobs plaintiff might be able to do. (Tr. at 32.)

**1.     Plaintiff**

Plaintiff testified that he was 21 years old and lived with his mother. (Tr. at 43.) He had graduated high school and was enrolled at MATC studying audio engineering. (Tr. at 45.) He failed his first semester because he could not stay focused, but he did better thereafter because he studied more and stayed on top of things. (Tr. at 46-47.) He worked at Wal-Mart for a few months in 2014; that job ended when he got sick and was hospitalized after not following his diabetes medication regimen. (Tr. at 48-49.)

Plaintiff identified diabetes as his most disabling condition. (Tr. at 55.) If he followed his medication regimen, however, the diabetes was controlled. (Tr. at 56.) He indicated that the diabetes had caused blurry vision about two years ago, but it was better now. (Tr. at 56-

4

57.) He also reported numbness in his left foot during his last year of high school, lasting for several months (Tr. at 58), but he was doing alright at the time of the hearing. The diabetes did make him thirsty, causing him to drink a lot of water and urinate often. (Tr. at 59.)

Plaintiff also identified ADHD as an impairment. He took medication for that condition in high school, which was very effective, but stopped taking it after high school due to side effects. He indicated that, without the medication, sometimes he could focus, sometimes not. (Tr. at 62.) It was not as bad as when he was younger, but it was still there. Asked why this would prevent him from working, he said: "I wouldn't be able to focus on the tasks I'm supposed to do." (Tr. at 63.) He identified no other medical conditions that would keep him from working. (Tr. at 63.) The ALJ asked about oppositional defiant disorder, but plaintiff did not think he had that. (Tr. at 63-64.) The ALJ also noted references to a learning disorder, and plaintiff indicated that he did poorly in math and received special help in school. (Tr. at 64.) He did well in other subjects. (Tr. at 65.) Regarding his activities, plaintiff testified that he cared for his two dogs, spent time with his girlfriend, and worked on projects for class.[3] (Tr. at 66-68.)

## 2. VE

The ALJ asked the VE about possible jobs for a person of plaintiff's age, education, and experience, limited to light work, with no climbing of ladders, ropes, or scaffolds, frequent climbing of ramps and stairs, never working at unprotected heights or around moving

---

[3]In function reports prepared in 2013 and 2014, plaintiff indicated that he went to school, did laundry, and cleaned his room. (Tr. at 225-26.) He reported no problems with personal care. (Tr. at 246.) He prepared meals daily and washed dishes. (Tr. at 247.) Hobbies included watching movies, trying to play basketball, and attending sporting events. (Tr. at 249.) He alleged that his impairments limited memory, completing tasks, and concentration. (Tr. at 250.)

5

mechanical parts, and off task 10% of the workday in addition to normal breaks. (Tr. at 70.) The VE identified three light, unskilled jobs: inspector/hand packager, assembler, and price marker. (Tr. at 71-72.)

**C.    ALJ's Decision**

On January 4, 2017, the ALJ issued an unfavorable decision. (Tr. at 11.) The ALJ accepted diabetes as a severe impairment but found plaintiff's mental impairments non-severe. (Tr. at 16.) The ALJ noted that while Dr. Meyers diagnosed ADHD, ODD, and learning disabilities, plaintiff nevertheless exhibited good function during the consultative evaluation. (Tr. at 16-17.) The ALJ further noted that, according to the treatment records, plaintiff typically exhibited good mental function on exam, with normal mood, affect, and behavior. School records reflected some behavioral problems, but plaintiff received the necessary credits and tested in the low average intellectual range. Finally, while plaintiff testified to some problems staying on task, he reported no significant problems associated with oppositional defiant disorder, he was able to graduate from high school, and he expected to obtain a two-year college degree in the future. (Tr. at 17.)

The ALJ considered the four broad functional areas set out in the regulations for mental disorders. First, the ALJ found mild limitation in activities of daily living. Plaintiff reported that he could, despite his ADHD, attend college courses, spend hours at home working on class projects, and tend to his two dogs. He also reported that he had no problems with personal care and could make his own meals, wash dishes, and attend sporting events. Second, the ALJ found mild limitation in social functioning. While the school records noted behavioral problems in school, plaintiff interacted appropriately with examiners and providers, attended college, worked part-time in the past, and went to sporting events. Third, the ALJ found mild

6

limitation in concentration, persistence, and pace. Plaintiff reported problems concentrating due to his ADHD, but the record showed that he was able to engage in a variety of activities demanding some ability to see a task through to completion and sustain focus and attention. (Tr. at 18.) Finally, the ALJ found no episodes of decompensation. Because these impairments caused no more than mild limitations under the first three areas, and no episodes of decompensation, they were non-severe under the regulations. (Tr. at 19.)

As for the opinion evidence, the ALJ gave great weight to the assessment from Dr. Meyers, who opined that plaintiff could understand, remember, and carry out simple instructions; respond appropriately to supervisors and coworkers; meet work pace demands; and withstand routine work stress and adapt to the changes he would find in a semi-skilled work environment. Dr. Meyers also assigned a GAF of 75, indicative of transient symptoms and no more than slight impairment of functioning. (Tr. at 19.) The ALJ also gave great weight to the reports from Drs. Edelman and Rattan, experts in social security disability program rules, who found plaintiff's mental impairments to be non-severe. (Tr. at 19-20.)

The ALJ then determined that plaintiff retained the residual functional capacity ("RFC") for light work, never climbing ladders, ropes, or scaffolds; frequently climbing ramps and stairs; and never working at unprotected heights or around moving mechanical parts. In addition to normal breaks, he would be off task less than 10% of the time in an eight-hour workday. (Tr. at 20.)

In making this finding, the ALJ considered plaintiff's statements. Plaintiff asserted that his impairments affected his ability to remember, complete tasks, and concentrate. He testified that he had been hospitalized due to problems associated with diabetes on a number of occasions. He also testified to secondary problems including blurry vision, which eventually

7

resolved, and numbness and abnormal sensation in the left foot, which also got better over time. Regarding his activities, plaintiff testified that he failed the first semester of college because he could not focus, but that he did better thereafter because he studied more and stayed on top of things. (Tr. at 21.)

The ALJ found that while plaintiff's impairments could cause the symptoms he alleged, his statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence. (Tr. at 21.) First, while plaintiff experienced some diabetes complications, these were often associated with failure to take insulin as prescribed. The records showed that he responded well to treatment and exhibited good function on examination, with no documented secondary problems such as diabetic retinopathy or peripheral neuropathy. (Tr. at 22-23.) Second, plaintiff's activities were difficult to reconcile with allegations of disabling symptoms. Plaintiff testified that he was able to attend college, spend hours working on class projects, take public transportation, care for his dogs, tend to his personal care, prepare his own meals, wash dishes, and attend sporting events. (Tr. at 23.)

The ALJ nevertheless accommodated plaintiff's diabetes symptoms with a limitation to light work based on evidence that he could have difficulty with the lifting and carrying requirements of medium work due to occasional symptoms of abdominal pain; postural limitations due to evidence of occasional problems with hyperglycemia and reports of abnormal sensation in the left foot; avoidance of hazards due to episodes of hyperglycemia; and time off task due to the need to follow a treatment regimen. (Tr. at 23.)

In making these findings, the ALJ also considered the opinions of the agency medical consultants, Drs. Foster and Shaw, who opined that plaintiff had no severe physical impairments that affected his ability to work. The ALJ gave these opinions partial weight, as

8

they found some support in the medical evidence, which indicated that plaintiff benefitted from treatment and exhibited some good physical function on examination. However, the consultants did not have the opportunity to consider the more recent treatment records, which showed hospitalizations due to diabetes complications. These records indicated that plaintiff's diabetes constituted a severe impairment. (Tr. at 24.)

Based on this RFC, and relying on the testimony of the VE, the ALJ determined that plaintiff could perform jobs existing in significant numbers, including inspector/hand packager, assembler, and price marker. The ALJ accordingly determined that plaintiff's disability ended on June 1, 2013. (Tr. at 25.)

## II. DISCUSSION

The court will reverse an ALJ's decision only if it is not supported by substantial evidence or if it is the result of an error of law. Stephens v. Berryhill, No. 16-4003, 2018 U.S. App. LEXIS 10373, at *5 (7th Cir. Apr. 24, 2018). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. Although the court reviews the record as a whole, it cannot substitute its own judgment for that of the ALJ by reevaluating the facts, or re-weighing the evidence to decide whether a claimant is in fact disabled. Id. at *5-6.

The ALJ applied the correct legal standards in evaluating plaintiff's claim, and he supported his decision with substantial evidence, considering the agency consultants' reports, the medical and school records, and plaintiff's statements in determining work capacity. The record contains no medical opinion evidence suggesting greater limitations. See Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (affirming reliance on agency consultants where no doctor suggested greater limitations); Flener v. Barnhart, 361 F.3d 442, 448 (7th Cir. 2004) ("It

is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation.").

Plaintiff identifies no error in the ALJ's analysis. He proceeds pro se in this court, but even unrepresented litigants must develop their arguments. See, e.g., Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001).[4]

Plaintiff's brief observations about the case do not warrant reversal. Plaintiff first notes that "treatment records revealed 'normal.'" (Pl.'s Br. [R. 13] at 9, citing Tr. at 595-97, 926-29, 939-40.) He does not explain how these records support his claim, however. He further notes that an intelligence test showed low average intellectual range when compared to his peers. (Pl.'s Br. at 9, citing Tr. at 706.) The ALJ acknowledged this testing (Tr. at 17), and plaintiff again does not explain how it supports his claim. Finally, plaintiff indicates that he does "not blend in with 'normal' kids or adults."[5] (Pl.'s Br. at 9.) The ALJ accepted that plaintiff had limitations, adopting a fairly limited RFC based on the various diabetic complications noted in the record. He nevertheless concluded, based on the undisputed testimony of the vocational expert, that a significant number of jobs existed in the economy within plaintiff's limitations. See Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se. Plaintiff must show that she was so functionally impaired . . . that she was precluded from engaging in any substantial gainful activity."); see also Luster v. Astrue, 358 Fed. Appx. 738, 741 (7th Cir. 2010) (noting that the claimant bears the burden

---

[4]With his complaint, plaintiff filed a motion to appoint counsel. I denied that motion without prejudice, indicating that he could renew it, if necessary, after attempting to secure counsel on his own. (R. 5.) He has not done so.

[5]He similarly averred in the complaint that "he is limited and not 'normal.'" (R. 1 at 3.)

10

of proving the effect of his impairments on his ability to work).

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is affirmed, and this case is dismissed.  The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 2nd day of May, 2017.

/s Lynn Adelman
LYNN ADELMAN
District Judge